## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CLAUDIA SAMPEDRO, DESSIE MITCHESON, JESSICA BURCIAGA, JOANNA KRUPA, and MERCEDES TERRELL, | |
| *Plaintiffs*, | |
| v. | Case No.  1:22-cv-1402 |
| ANYADO GROUP, LLC d/b/a XO RESTAURANT & LOUNGE | |
| and | |
| DOES 1 THROUGH 5, | |
| *Defendants.* | |

## COMPLAINT

Plaintiffs CLAUDIA SAMPEDRO, DESSIE MITCHESON, JESSICA BURCIAGA, JOANNA KRUPA, MERCEDES TERRELL, (collectively, "Plaintiffs"), by and through their undersigned counsel, as and for their Complaint ("Complaint") against Defendants ANYADO GROUP, LLC d/b/a XO RESTAURANT & LOUNGE and DOES 1 THROUGH 5 (collectively "Defendants") respectfully allege as follows:

## BACKGROUND

1.      This is an action for damages and injunctive relief relating to Defendants' misappropriation, alteration, and unauthorized publication and use in advertising of images of Plaintiffs, each of whom are well-known professional models, to promote their night club, XO Restaurant & Lounge, located in the District of Columbia ("XO Restaurant & Lounge" or the "Club").

2.      As detailed below, Defendants' misappropriation and unauthorized use of Plaintiffs' images, photos and likenesses (collectively, "Images") constitutes: a) violation of

section 43 of the Lanham Act, 28 U.S.C. § 1125(a)(1), which prohibits both false or misleading representations of fact in commercial advertising and the false or misleading use of a person's image for commercial purposes; b) violation of each Plaintiff's common law right of publicity; and, c) violation of various common law torts.

3.       In addition to the actual, punitive and exemplary damages set forth below, Plaintiffs likewise seek an Order from this Court permanently enjoining Defendants from using their Images to promote any Club, via any medium.

## JURISDICTION & VENUE

4.       This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs' have stated claims under, *inter alia*, the Lanham Act, 15 U.S.C. § 1125(a)(1).  This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) insofar as there is complete diversity of the parties to this action, and the amount in controversy exceeds seventy-five thousand dollars ($75,000.00).

5.       As set forth immediately below, Plaintiffs are, and at all times relevant to this action have been, professional models who reside throughout the United States.

6.       According to publicly available records, defendant Anyado Group, LLC ("Anyado") is a corporation formed under the laws of the District of Columbia, with its principal place of business located at 1426 L St. NW Washington, D.C. 20005.  Anyado Group, LLC operates XO Restaurant & Lounge, which is located at 1426 L St. NW Washington, D.C. 20005.

7.       Venue is proper in the District of Columbia because it is Defendants' place of business.

## PARTIES

*Plaintiffs*

2

8.      Plaintiff Claudia Sampedro ("Sampedro") is a well-known professional model, and a resident of Miami-Dade, County.

9.      Plaintiff Dessie Mitcheson ("Mitcheson") is a well-known professional model, and a resident of Orange County, California.

10.     Plaintiff Jessica Burciaga ("Burciaga") is a well-known professional model, and a resident of Fulton County, Georgia.

11.     Plaintiff Joanna Krupa ("Krupa") is a well-known professional model, and a resident of Los Angeles County, California.

12.     Plaintiff Mercedes Terrell ("Terrell") is a well-known professional model, and a resident of Clark County, Nevada.

***Defendants***

13.     According to publicly available records, defendants Anyado Group, LLC was formed under the laws of the state of District of Columbia.  During times relevant to this action, Anyado Group, LLC operated XO Restaurant & Lounge in the District of Columbia.

14.     DOES 1 THROUGH 5 are certain yet to be named individuals and/or entities that Anyado Group, LLC worked in conjunction with, at the direction of, or in concert with as pertains to the subject advertisements which contain images of Plaintiffs.  On information and belief, and without limitation, such individuals and/or entities include graphic designers, independent contractors, DJ, social media consultants and/or others.

## **FACTUAL ALLEGATIONS**

15.     As set forth immediately below, each Plaintiff is a well-known professional model who earns her livelihood modeling and licensing her Images to companies, magazines and individuals for the purpose of advertising products and services.

16.     Plaintiffs' careers in the modeling industry place a high degree of value on their good will and reputation, which is critical in order to maximize their earning potential, book modeling contracts, and establish each of their individual brands.  In furtherance of establishing, and maintaining, their brands, Plaintiffs are necessarily selective concerning the companies, and brands, for which they model.

17.     Each of the Plaintiffs' Images was misappropriated, and intentionally altered, by one or more of the Defendants in order to make it appear that they worked at, endorsed or were otherwise associated or affiliated with the Club.

18.     In the case of every Plaintiff, such appearance was false.

19.     Moreover, in every case this misappropriation occurred without any Plaintiff's knowledge, consent or authorization, at no point did any Plaintiff ever receive any remuneration for Defendants' improper and illegal use of their Images, and Defendants' improper and illegal use of Plaintiffs' Images have caused each Plaintiff to suffer substantial damages.

20.     Defendants' obvious intention in using Plaintiffs' images without consent or remuneration was to harm Plaintiffs by effectively forcing them to appear in Defendants' advertising for no compensation.

21.     Further, in certain cases Defendants misappropriated Plaintiffs' advertising ideas because the Images they misappropriated came from Plaintiffs' own social media pages, which each Plaintiff uses to market herself to potential clients, grow her fan base, and build and maintain her brand.

***Plaintiffs' Backgrounds and Careers***

22.     Sampedro is a Cuban born model, mother, and spokeswoman. Sampedro moved to Miami when she was 6 years old and at 16, was discovered by Elite models. Sampedro has

4

appeared in many catalogues, and magazine editorials. She has a number of cover credits for magazines such as *Nine 5 Four, Shock, Face to Face* and *Mixed*. Sampedro is a sponsored model for Nutri Sups Nutrition and is also a spokesmodel and contracted model for Bare Ava. Sampedro is in the Social Media Influencers top class with over a million Instagram followers and a further combined half million fans on Facebook and Twitter. Sampedro has three children, and is married to former Green Bay's star defensive end Julius Peppers.

23.    That we know of, Sampedro is depicted in the photos in Exhibit "A" to promote XO Restaurant & Lounge on its Instagram page. These Images were intentionally altered to make it appear that Sampedro was either a stripper working at XO Restaurant & Lounge, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

24.    Sampedro has never been employed at XO Restaurant & Lounge, has never been hired to endorse XO Restaurant & Lounge, has never been otherwise associated or affiliated with XO Restaurant & Lounge, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

25.    Mitcheson competed for Miss Pennsylvania USA at eighteen and placed in the top ten. Shortly after, she became the face of Playboy Intimates, the face of MGM Grand Las Vegas, and Miss Pennsylvania Intercontinental. Mitcheson entered *Maxim* magazine's annual "Hometown Hottie" contest along with thousands of models, she was crowned *Maxim* magazine's "Hometown Hottie". Later that year, Mitcheson was #100 on *Maxim's* "Hot 100" list. She has graced the pages of multiple issues of *Maxim*, including a three-page spread, two centerfolds, and the cover for the May 2014 "Navy" issue. Mitcheson was recently featured as the main Tecate Beer ring girl in the biggest Pay-per-View event in history, the Mayweather v. Pacquiao fight, which gave her worldwide visibility with over 100 million viewers. This triggered a huge demand

for her modeling services. She has been featured by national advertisers such as Crest toothpaste, Tecate, Roma Costumes, and J. Valentine. Mitcheson currently has 406 thousand Instagram followers, over 22 thousand Facebook followers, and 13.9 thousand Twitter followers.

26.     That we know of, Mitcheson is depicted in the photo in Exhibit "B" to promote XO Restaurant & Lounge on its Instagram page. This Image was intentionally altered to make it appear that Mitcheson was either a stripper working at XO Restaurant & Lounge, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

27.     Mitcheson has never been employed at XO Restaurant & Lounge, has never been hired to endorse XO Restaurant & Lounge, has never been otherwise associated or affiliated with XO Restaurant & Lounge, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

28.     Burciaga is a model and a business owner from Orange County, CA. She is of Mexican, French, and Irish descent. Burciaga began modeling in 2005 when she submitted a few photos to *Stuff Magazine*. The magazine responded by flying her out to New York for a photo shoot. After Burciaga's first photo shoot, she won *Stuff Magazine's,* "Neighborhood Knockout," contest.  The prize was $5,000, a 4-page spread in the magazine, and an appearance as a ring girl in EA Sports *Fight Night Round* 3 video game. Burciaga's popularity rose quickly and she began appearing in various magazines including *Playboy, Maxim, Import Tuner, Modified Mag, Performance Auto & Sound, Show Latina, Lowrider Magazine*, and many others. Burciaga was the *Playboy* Playmate of the Month for February 2009 and has appeared as herself in several episodes of the reality TV series *The Girls Next Door*. Recently she has been focusing on various business ventures including a women's online clothing boutique, www.SailorandSaint.com. Burciaga's social media reach has surpassed 1.6 million followers on Instagram, over 49 thousand

Facebook likes, and over 192 thousand followers on Twitter.

29.     That we know of, Burciaga is depicted in the photos in Exhibit "C" to promote XO Restaurant & Lounge on its Facebook and Instagram pages. These Images were intentionally altered to make it appear that Burciaga was either a stripper working at XO Restaurant & Lounge, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

30.     Burciaga has never been employed at XO Restaurant & Lounge, has never been hired to endorse XO Restaurant & Lounge, has never been otherwise associated or affiliated with XO Restaurant & Lounge, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

31.     Krupa is, and at all times relevant to this action was, a Polish American model, actress, and dancer. She was named the "Sexiest Swimsuit Model in the World" and has appeared on the cover of magazines such as *Personal, Steppin' Out, Envy, Shape, FHM, Stuff, Inside Sport, Teeze, Maxim*, and twice for *Playboy*. Krupa has also graced the covers of South African *GQ*, and the Polish editions of *Cosmopolitan, InStyle, Glamour*, and *Grazia*. Krupa was voted "Model of the Year" in Maxim's 2004-2005 German edition and was ranked #55 in Maxim's "Hot 100" 2011 edition and was voted "Model of the Year" in Maxim's 2004-2005 German edition. She has appeared on the cover of Playboy magazine twice, modeled for PETA, and founded an animal rescue group, Angels For Animal Rescue, with her friend Gabi Gutierrez.  In addition, Krupa has appeared in "The Underground Comedy Movie" (1999) (2010 re-issue), "Planet of the Apes" (2001), "The Man Show" (2002–2003), the action film "Max Havoc: Curse of the Dragon," (2004), "Las Vegas" episode "Degas Away with It" (2004), "CSI: Crime Scene Investigation" episode "Kiss-Kiss, Bye-Bye" (2006), "The Dog Problem" (2006), "Scary Movie 4" (2006), "Ripple Effect" (2007), "Skinner Box" (2007),the television show "Superstars" (June 2009), and

in Season 9 of "Dancing with the Stars." (2009), "Szymon Majewski Show" (Polish TV talk show) (2010), Krupa was a cast member for the reality TV show "The Real Housewives of Miami" (2012–2013), "Ridiculousness" (2014), and has been the host and head judge in Poland's "Next Top Model" since 2010.

32.     That we know of, Krupa is depicted in the photo in Exhibit "D" to promote XO Restaurant & Lounge on its Facebook and Instagram pages. This Image was intentionally altered to make it appear that Krupa was either a stripper working at XO Restaurant & Lounge, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

33.     Krupa has never been employed at XO Restaurant & Lounge's, has never been hired to endorse XO Restaurant & Lounge, has never been otherwise associated or affiliated with XO Restaurant & Lounge, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

34.     Terrell is an American model and spokesmodel. Ms. Terrell is a contract model who travels and works with Monster Energy Supercross. Ms. Terrell also appears with The Superbike Races special events and also with Moto GP Championship races. Ms. Terrell is probably best known and has a huge social media following as the main Ring Girls for Bellator MMA fighting. Ms. Terrell has featured in a number of magazines and has appeared on the cover of *Wheels and Heels* magazine, *Dub Magazine, Beer magazine, Girls Lowrider* and many more.

35.     That we know of, Terrell is depicted in the photos in Exhibit "E" to promote XO Restaurant & Lounge on its Instagram page. These Images were intentionally altered to make it appear that Terrell was either a stripper working at XO Restaurant & Lounge, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

36.     Terrell has never been employed at XO Restaurant & Lounge, has never been hired

to endorse XO Restaurant & Lounge, has never been otherwise associated or affiliated with XO Restaurant & Lounge's, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

***Defendants' Business***

37.     Upon information and belief, Defendants operated, during the relevant time period, the Club, where they engaged in the business of selling alcohol and food.

38.     Upon information and belief, and in furtherance of its promotion their promotion of the Club, Defendants own, operate and control the Club's social media accounts, including its Facebook, Twitter, and Instagram accounts.

39.     Defendants used the Club's Facebook, Twitter, and Instagram accounts to promote the Club, and to attract patrons thereto.

40.     Defendants did this for their own commercial and financial benefit.

41.     Defendants have used, advertised, created, printed and distributed the Images of Plaintiffs, as further described and identified above, in order to create the false impression with potential clientele that each Plaintiff either worked at Club, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

42.     Defendants used Plaintiffs' Images and created the false impression that they worked at or endorsed the Club to receive certain benefits therefrom, including but not limited to: monetary payments; increased promotional, advertising, marketing, and other public relations benefits; notoriety; publicity; as well as an increase in business revenue, profits, proceeds, and income.

43.     As Defendants were at all times aware, at no point has any Plaintiff ever been affiliated with or employed by the Club and at no point have any of the Plaintiffs ever endorsed

the Club, or otherwise been affiliated or associated with the Club.

44.     All of Defendants' activities, including their misappropriation of Plaintiffs' Images, and publication of same, were done without the knowledge or consent of Plaintiffs, and Defendants did not compensate Plaintiffs for their use of their Images.

45.     As such, Plaintiffs have never received any benefit from Defendants' use of their Images.

***Standard Business Practices in the Modeling Industry***

46.     It is common knowledge in the modeling industry that the hiring of a model for a commercial purpose involves a particularized methodology and process.

47.     The fee that a professional model, such as each of the Plaintiffs, will receive is negotiated by her agency, and involves consideration of, without limitation, at least the following factors: a) the reputation, earning capacity, experience, and demand of that particular model; b) the location where the photo shoot takes place, and the length thereof; c) where and how the images are going to be used by the client (*e.g.*, company website, social media, television commercials, billboards or posters), known as "usage"; and, d) the length of time (known as the "term") the rights to use the photos will be assigned.  Most licenses to use a model's image are for 1, 2, or 3 year terms; but almost never is there a "lifetime" term.

***Defendants' Misappropriation of Plaintiffs' Images***

48.     As detailed above, Defendants knowingly, and without the prior consent of any of the Plaintiffs, invaded Plaintiffs' privacy by using Plaintiffs' Images for commercial purposes in order to promote the Club by and through various marketing and promotional mediums including, without limitation, the Club's website, Facebook and Instagram.

49.     Defendants showcased Plaintiffs' Images on the Club's social media pages to create

the false impression that Plaintiffs worked at the Club, endorsed, promoted or sponsored same, or were otherwise associated or affiliated with same.

50.     Defendants did so to attract clientele to the Club, promote the Club, and thereby generate revenue for Defendants.

51.     Defendants were aware that, by using Plaintiffs' Images, they were violating Plaintiffs' right of publicity, and creating a false impression to potential customers that Plaintiffs worked at and/or endorsed the Club.

52.     Unauthorized use of Plaintiffs' Images deprives them of income they are owed relating to the commercialization of their Images.

53.     In addition, Plaintiffs allege that any improper or unauthorized use of their Images substantially injures their careers.

54.     This is especially so insofar as each of Plaintiffs' Images have been associated with a night club, and the implication of Defendants' use of Plaintiffs' Images is that they are strippers, endorse a night club, or are otherwise associated or affiliated with a night club.

55.     At no point were any of the Plaintiffs ever affiliated with the Club, or Defendants.

56.     Each of Plaintiffs' Images was used without her consent.

57.     At no point was any Plaintiff ever contacted by any Defendants, or any representative of any of the Defendants, to request the use of any of Plaintiffs' Images.

58.     No Defendant ever obtained, either directly or indirectly, permission to use any of Plaintiffs' Images.

59.     No Defendant ever paid any Plaintiff for its use of her Images on any promotional materials, including the Club's website, Twitter, Facebook, or Instagram accounts.

60.     Defendants used Plaintiffs' Images without their consent, and without providing

remuneration, in order to permanently deprive each of the Plaintiffs of her right to use her Images.

61.     Upon information and belief, Defendants have taken the foregoing actions with the intent of causing irreparable harm.

### FIRST CAUSE OF ACTION
#### (Common Law Right of Publicity)

66.     Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

67.     As set forth hereon, each Plaintiff has and had at the time of Defendants' misappropriation a commercial interest in her image, photo, persona and likeness.

68.     As set forth hereon, Defendants have violated each Plaintiff's right to publicity under District of Columbia law.

69.     Defendants have done so by appropriating each Plaintiff's image and likeness for commercial purposes without authority or consent.

70.      Defendants invaded and violated Plaintiffs' privacy and misappropriated their likeness by publishing their Images on the Club's website or related social media accounts as part of Defendants' advertising campaign.

71.     At all relevant times, the Club's website and social media accounts were used and operated by Defendants for advertising and trade purposes.

72.     The Club's website and social media accounts were designed to attract business to the Club and generate revenue for Defendants.

73.     Plaintiffs are informed and believe and hereon allege that the manner in which Defendants posted and publicized their image and likeness in a manner that was hidden, inherently undiscoverable, or inherently unknowable, in that Defendants published their image and likeness on social media threads that, over time, are (for example, but not limited to) "pushed" down in

time from immediate visibility.

74.     Plaintiffs are further informed and believe and hereon allege that discovery will prove that Defendants' republicized Plaintiff's image and likeness on various occasions, via different mediums, after the initial date of the posting of their image and likeness and through the filing of this complaint.

75.     Plaintiffs are informed and believe and hereon allege that Defendants' republication of Plaintiff's image and likeness was altered so as to reach a new audience and/or promote a different product.

76.     Upon information and belief, Defendants' use of Plaintiffs' Images did in fact attract clientele and generate business for the Club.

77.     At no point did any Defendants ever receive permission or consent to use any Plaintiff's Image on their website or social media account.

78.     Defendants were at all relevant times aware that they never received any Plaintiffs' permission or consent to use their Images on any website or social media account, or on any other medium, in order to promote the Club.

79.     At no point did Defendants compensate Plaintiffs for its use of their Images.

80.     No applicable privilege or authorization exists for Defendants' use of Plaintiffs' Images.

**SECOND CAUSE OF ACTION**
**(Violation of §43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(B): False Advertising)**

81.     Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

82.     The provisions of the Lanham Act, 215 U.S.C. §1125, *et seq*. apply to Defendants, and protect Plaintiffs from the conduct described hereon.

83.     As set forth hereon, each advertisement at issue in this action were false and misleading because no Plaintiff ever worked at the Club or agreed to appear in the Club's advertisements.

84.     Given the false and misleading nature of the advertisements, they had the capacity to deceive consumers and, upon information and belief, did so deceive consumers.

85.     Upon information and belief, said deceptive advertisements had a material effect on the purchasing decisions of consumers who attended the Club.

86.     Insofar as Defendants published these false and misleading advertisements on the internet, they had the capacity to affect interstate commerce, and, upon information and belief, did so affect interstate commerce.

87.     Despite the fact that Defendants were at all times aware that the Plaintiffs neither worked at, nor endorsed the Club, Defendants nevertheless used Plaintiffs' Images in order to mislead potential customers as to Plaintiff's employment at and/or affiliation with the Club.

88.     Defendants knew that their use of Plaintiffs' Images would cause consumer confusion as to Plaintiffs' sponsorship and/or employment at the Club.

89.     Upon information and belief, Defendants' use of Plaintiffs' Images did in fact cause consumer confusion as to Plaintiffs' employment at and/or endorsement of the Club, and the goods and services provided by the Club.

90.     Due to Defendants' unauthorized use of Plaintiffs' Images in order to create a false advertisement prohibited by section 43 of the Lanham Act, Plaintiffs have been damaged in an amount to be determined at trial and are likewise entitled to punitive and exemplary damages.

**THIRD CAUSE OF ACTION**
**(Violation of §43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A): False Association)**

91.     Plaintiffs hereby repeat and reallege each and every allegation set forth in the

preceding paragraphs as if fully set forth hereon.

92.     The provisions of the Lanham Act, 215 U.S.C. §1125, *et seq*. apply to Defendants, and protect Plaintiffs from the conduct described hereon.

93.     Defendants used Plaintiffs' Images in order, *inter alia*, to create the false impression with the public that Plaintiffs were affiliated, connected, or associated with the Club, or worked at, sponsored, or approved of the Club's goods, services or commercial activities.

94.     This was done to promote and attract clientele to the Club, and thereby generate revenue for the Defendants.

95.     Thus, this was done in furtherance of Defendants' commercial benefit.

96.     Despite the fact that Defendants were at all times aware that the Plaintiffs were neither affiliated, connected or associated with the Club nor worked at, sponsored, or approved of the Club's goods, services or commercial activities, Defendants nevertheless used Plaintiffs' Images in order to mislead potential customers as to Plaintiff's employment at and/or affiliation with the Club.

97.     Defendants knew that their use of Plaintiffs' Images would cause consumer confusion as to Plaintiffs' sponsorship, affiliation, connection, association and/or employment at the Club.

98.     Upon information and belief, Defendants' use of Plaintiffs' Images did in fact cause consumer confusion as to Plaintiffs employment at and/or endorsement of the Club, and the goods and services provided by the Club.

99.     Due to Defendants' unauthorized use of Plaintiffs' Images in order to create a false endorsement prohibited by section 43 of the Lanham Act, Plaintiffs have been damaged in an amount to be determined at trial and are likewise entitled to punitive and exemplary damages.

## FOURTH CAUSE OF ACTION
### (Negligence and *Respondeat Superior*)

100.     Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

101.     Plaintiffs are further informed and believe and hereon allege that Defendants maintain or should have maintained employee policies and procedures which govern the use of intellectual property, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes which specifically prevent the *unauthorized and non-consensual* use of intellectual property, publicity rights and/or the image and likeness of individuals for promotional and advertising purposes.

102.     Further, Defendants should have maintained, or failed to maintain, policies and procedures to ensure that their promotional and/or advertising materials and campaigns were not deceptive or misleading in their advertising practices.

103.     Defendants owed a duty of care to Plaintiffs to ensure that their advertising and promotional materials and practices did not infringe on their property and publicity rights.

104.     Defendants further owed a duty of care to consumers at large to ensure that their promotional and/or advertising materials and campaigns were not deceptive or misleading in their advertising practices.

105.     Defendants breached their duty of care to both Plaintiffs and consumers by failing to either adhere to or implement policies and procedures to ensure that the use of intellectual property, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes were not unauthorized, non-consensual, or false and deceptive.

106.     Defendants further failed to enforce or implement the above-stated policies and/or to communicate them to employees, and/or supervise its employees in order to ensure that these

16

policies, along with Federal and District of Columbia law, were not violated.  Defendants breached their duty of care to Plaintiffs and consumers by its negligent hiring, screening, retaining, supervising, and/or training of its employees and agents.

107.    Defendant's breach was the proximate cause of the harm Plaintiffs suffered when their Images were published without their consent, authorization, and done so in a false, misleading and/or deceptive manner.

108.    As a result of Defendants' negligence, Plaintiffs have suffered damages in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION
### (Conversion)

109.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

110.    Each Plaintiff is, and at all relevant times were, the exclusive owners of all right, title and interest in their Images, and have property interests thereon.

111.    By the conduct detailed above, Defendants converted Plaintiffs' property rights in their Images for their own use and financial gain Images for its own use and financial gain.

112.    As a result of Defendants' unlawful conversion of Plaintiffs' Images, and publication of same, Plaintiffs have suffered damages in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION
### (Unjust Enrichment)

113.    Plaintiffs hereby repeat and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

114.    As set forth in detail above, Defendants published Plaintiffs' Images in order to promote the Club to the general public and potential clientele.

115.    Defendants' publication was for the purpose of creating a false impression to the general public that Plaintiffs were either working at the Club or endorsed the Club.

116.    Defendants' purpose in publishing Plaintiffs' Images was to benefit commercially due to their purported association with, employment of, and/or endorsement by Plaintiffs.

117.    Upon information and belief, Defendants did in fact benefit commercially due to their unauthorized use of Plaintiffs' Images.

118.    Defendants have been enriched by their unauthorized control over, and publication of, Plaintiffs' Image because said publication has assisted Defendants in attracting clientele to the Club.

119.    Plaintiffs have not been compensated for Defendants' commercial exploitation of their Images, and thus any financial benefit which Defendants received due to said exploitation is unjust.

120.    As such, Plaintiffs have been damaged in an amount to be determined at trial.

## SEVENTH CAUSE OF ACTION
### (Quantum Meruit)

121.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

122.    Plaintiffs are each internationally known models who earn their livings appearing in, *inter alia*, commercials, advertisements, and publications on behalf of companies and brands.

123.    Companies and brands that choose to hire Plaintiffs compensate them for their appearances.

124.    Although Defendants have availed themselves of the benefit of being associated with Plaintiffs, and making it appear to potential customers that Plaintiffs either work at their the Club, endorse the Club, or are otherwise affiliated with the Club, Defendants have not

18

compensated Plaintiffs.

125.   Plaintiff is therefore entitled to reasonable compensation for the Club's unauthorized use of their Images.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request Judgment in their favor and against Defendants as follows:

(a) For actual damages in an amount to be determined at trial relating to Plaintiffs' first through eighth causes of action, plus pre-judgment and post-judgment interest;

(b) For an order permanently enjoining Defendants from using Plaintiffs' Images to promote the Club;

(c) For punitive damages in an amount to be determined at trial;

(d) For all costs and attorneys' fees incurred by Plaintiffs in the prosecution of this Action;

(e) For such other and further relief as the Court may deem just and proper.

Dated: May 19, 2022

Respectfully submitted,

CLAUDIA SAMPEDRO, DESSIE MITCHESON, JESSICA BURCIAGA, JOANNA KRUPA, and MERCEDES TERRELL,

By Counsel

Timothy D. Fisher          (VSB No. 85323)
Wharton, Levin, Ehrmantraut & Klein
10300 Eaton Place, Suite 301
Fairfax, Virginia 22030
Phone:      (703) 591-9700
Fax:        (703) 591-0023
Email:      tdf@wlekn.com
*Local Counsel for Plaintiff*

    and

John V. Golaszewski*
The Casas Law Firm, P.C.
1740 Broadway, 15th Floor
New York, New York
Phone:      (646) 872-3178
Fax:        (855) 220-9626
john@talentrights.law
*Pro Hac Vice Application Forthcoming*