## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CLAUDIA SAMPEDRO, *et al.*<br><br>Plaintiffs,<br><br>v.<br><br>ANYADO GROUP, LLC d/b/a XO RESTAURANT & LOUNGE,<br><br>Defendant. | Civil Action No. 22-1402 (BAH)<br><br>Chief Judge Beryl A. Howell |

## <u>MEMORANDUM OPINION</u>

Plaintiffs, Claudio Sampedro, Dessie Mitcheson, Jessica Burciaga, Joanna Krupa, and Mercedes Terrell, who are all professional models, seek a default judgment, pursuant to Federal Rule of Civil Procedure 55(b), and monetary and injunctive relief in the instant action, alleging that defendant Anyado Group LLC, doing business as XO Restaurant & Lounge ("XO Lounge"), engaged in violations of section 43(a) of the Trademark Act of 1946 ("Lanham Act"), as amended, 15 U.S.C. § 1125(a), the plaintiffs' common law rights of publicity, and other common law torts, by using images of plaintiffs, taken from separate modelling engagements or the plaintiffs' own social media pages, in its own advertising on social media without plaintiffs' consent. Compl. ¶¶ 15–21, 38–44, ECF No. 1; Pls.' Mot. Default J. ("Pls.' Mot.") at 1–2, ECF No. 16. No attorney has entered an appearance on defendant's behalf, filed any response to the Complaint, nor moved to set aside the entry of default against each defendant. *See* Clerk's Entry Default, ECF No. 15.

For the reasons set forth below, default judgment is granted as to four of the seven counts of the Complaint and plaintiffs' requests for a permanent injunction, damages, and costs are granted. Plaintiffs' request for attorney's fees is denied.

1

I.      BACKGROUND

The relevant factual background, as set out in the Complaint, and procedural history is summarized below.

A.      Factual Background

Plaintiffs, who are citizens of Florida, California, Georgia, and Nevada, are all professional models.  Compl. ¶¶ 8–12.  They earn their livelihoods "modeling and licensing" their images "to companies, magazines and individuals for the purpose of advertising products and services."  *Id.* ¶ 15.  Per plaintiffs' description, "careers in the modeling industry place a high degree of value on [the models'] good will and reputation" and, as a result, each plaintiff works to establish and maintain her "individual brand[]."  *Id.* ¶ 16.  To that end, "Plaintiffs are necessarily selective concerning the companies, and brands, for which they model."  *Id.*

Defendant is a limited liability company formed under the laws of and with its principal place of business in the District of Columbia.  *Id.* ¶¶ 6, 13.  One of its endeavors is operating XO Lounge, a night club located in the District of Columbia.  *Id.* ¶ 13.   In 2017, defendant, either working alone or in conjunction with unknown "graphic designers, independent contractors, DJ[s], social media consultants," or others, created a series of advertisements for events and parties at XO Lounge that were posted on XO Lounge's website and on various pages on Facebook and Instagram.  *See id.* ¶¶ 14, 38–42, 48, 50; Compl., Ex. A ("Sampedro Postings"), ECF 1-1; Compl., Ex. B ("Mitcheson Postings"), ECF 1-2; Compl., Ex. C ("Burciaga Postings"), ECF 1-3; Compl., Ex. D ("Krupa Postings"), ECF 1-4; Compl., Ex. E ("Terrell Postings"), ECF 1-5.   Those advertisements featured images of plaintiffs (collectively, the "Images")— presumably taken from existing, publicly available modelling work plaintiffs had done—which had been "intentionally altered to make it appear that [each plaintiff] was either a stripper

working at XO Restaurant & Lounge, that she endorsed the club, or that she was otherwise associated or affiliated with the Club."  Compl. ¶¶ 23, 26, 29, 32, 35, 41.

In fact, however, plaintiffs had no association with XO Lounge, had never modelled for its advertisements, and had never consented to defendant's use of their Images in this way.  *Id.* ¶¶ 24, 27, 30, 33, 36, 43–44, 56–58.  Plaintiffs never received any payment for defendant's use of their Images, and further allege that their appearance in defendant's advertisements "substantially injures their careers" in that the advertisements are likely to mislead viewers into believing that plaintiffs "are strippers, endorse a night club, or are otherwise associated or affiliated with a night club," thus eroding the individual brands they had worked to create.  *Id.* ¶¶ 45, 53–54.

### B.    Procedural Background

On May 19, 2022, plaintiffs initiated this litigation, alleging violation of their common law rights of publicity, Compl. ¶¶ 66–80 (Count I); false advertising and false association in violation of the Lanham Act, 15 U.S.C. § 1125(a), *id.* ¶¶ 81–99 (Counts II and III); negligence, *id.* ¶¶ 100–08 (Count IV); conversion, *id.* ¶¶ 109–12 (Count V); unjust enrichment, *id.* ¶¶ 113–20 (Count VI); and quantum meruit, *id.* ¶¶ 121–25 (Count VII).  Plaintiffs seek a permanent injunction of defendant's use of plaintiffs' Images to promote XO Lounge, damages, and attorney's fees and costs.  *Id.* at 19; Pls.' Mot. at 4–5.[1]

---

[1]    While the allegations in plaintiffs' Complaint do not specify the dates of defendant's violative conduct or the dates on which plaintiffs first became aware of that conduct, the exhibits appended to the Complaint show that defendant's misappropriation of plaintiffs' Images occurred in 2017. *See* Compl., Exs. A—E, ECF Nos. 1-1–1-5. Plaintiffs therefore waited nearly five years to sue, which may well have presented a laches issue for their claims. *See, e.g.*, *Paleteria La Michoacana, Inc. v. Productos Lacteos Tocumbo S.A. De C.V.*, 69 F. Supp. 3d 175, 213–14 (D.D.C. 2014) (concluding that in the District of Columbia, the appropriate statute of limitations period for Lanham Act claims to inform the laches analysis is three years).  The doctrine of laches is an affirmative defense, however, meaning that defendant's failure to raise the defense operates to prevent any consideration of the defense.  The D.C. Circuit has clarified that this remains the consequence even when defendant is entirely absent from the proceedings, as here. *See Maalouf v. Islamic Republic of Iran*, 923 F.3d 1095, 1109 (D.C. Cir. 2019).  As such, the timeliness, or lack thereof, of plaintiffs' claims will not be considered.

Defendant was served on July 14, 2022, Return Service/Aff., ECF No. 12, but did not timely answer. *See* Fed. R. Civ. P. 12(a)(1)(A)(i) ("A defendant must serve an answer . . . within 21 days after being served with the summons and complaint[.]").  Plaintiffs then moved for an entry of default, Aff. Default, ECF No. 14, which the Clerk of the Court entered against defendant on August 26, 2022, Clerk's Entry Default, ECF No. 15.  Plaintiffs thereafter filed the pending motion for default judgment.  After that motion had been pending for two weeks, defendant was ordered to show cause why it should not be granted as conceded. *See* Minute Order (Oct. 21, 2022).  Defendant has filed no response to plaintiffs' motion nor to the order to show cause, and has made no other filing in connection with this case.

## II.   LEGAL STANDARD

Although dispositions on the merits are generally favored, the Federal Rules of Civil Procedure "provide for default judgments . . . [to] safeguard plaintiffs 'when the adversary process has been halted because of an essentially unresponsive party,'" and to protect "'the diligent party . . . lest he be faced with interminable delay and continued uncertainty as to his rights.'" *Mwani v. bin Laden*, 417 F.3d 1, 7 (D.C. Cir. 2005) (quoting *Jackson v. Beech*, 636 F.2d 831, 836 (D.C. Cir. 1980)).  "Obtaining a default judgment is a two-step process which 'allows the defendant the opportunity to move the court to set aside the default before the court enters default judgment.'" *Denson v. DC Restaurant Holdings, Inc.*., 19-cv-1609 (DLF), 2021 WL 4988994, at *1 (D.D.C. Oct. 27, 2021) (quoting *Carpenters Labor-Mgmt. Pension Fund v. Freeman-Carder LLC*, 498 F. Supp. 2d 237, 239 n.1 (D.D.C. 2007)).

First, pursuant to Federal Rule of Civil Procedure 55(a), "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."  Fed. R. Civ. P.

55(a); *see* 10A Charles Alan Wright, *et al.*, FEDERAL PRACTICE AND PROCEDURE § 2682 (4th ed. 2022) ("When the prerequisites of Rule 55(a) are satisfied, an entry of default may be made by the clerk without any action being taken by the court . . . [as long as] the clerk [has] examine[d] the affidavits filed and [found] that they meet the requirements of Rule 55(a)."). Upon entry of default, "[a]n allegation—other than one relating to the amount of damages—is admitted." Fed. R. Civ. P. 8(b)(6); *see also Cross v. Equityexperts.org, LLC*, 19-cv-14067, 2021 WL 5279412, at *1 n.1 (11th Cir. Nov. 12, 2021) ("[A] defaulted defendant is deemed to admit the plaintiff's well-pleaded allegations of fact, he is not held to admit facts that are not well-pleaded or to admit conclusions of law." (quoting *Cotton v. Mass. Mut. Life Ins. Co.*, 402 F.3d 1267, 1278 (11th Cir. 2005))); *Arwa Chiropractic, P.C. v. Med-Care Diabetic & Med. Supplies, Inc.*, 961 F.3d 942, 948 (7th Cir. 2020) ("When a court enters a default judgment as to liability, it must accept as true all factual allegations in the complaint, except those regarding the amount of damages."); *Polidoro v. Saluti*, 675 F. App'x 189, 190 (3d Cir. 2017) ("In considering a motion for a default judgment under Rule 55(b)(2), a district court should accept as true the well-pleaded factual allegations of the complaint, but the court need not accept the moving party's legal conclusions or allegations relating to the amount of damages."  (citation omitted)).

Then, the diligent party may move for default judgment, *see* Fed. R. Civ. P. 55(b)(2), but such relief "is not automatic," *Mwani*, 417 F.3d at 6.  "[T]he defendant['s] default notwithstanding, the plaintiff is entitled to a default judgment only if the complaint states a claim for relief," *Jackson v. Corr. Corp. of Am.*, 564 F. Supp. 2d 22, 27 (D.D.C. 2008) (internal quotation omitted), the jurisdictional prerequisites are satisfied, *Mwani*, 417 F.3d at 6, and the court in its discretion finds that default judgment is appropriate, *Jackson*, 636 F.2d at 835.

## III.    DISCUSSION

The jurisdictional prerequisites in this case are clearly satisfied.  Subject-matter jurisdiction over this action is established, pursuant to 28 U.S.C. § 1332(a)(1), because the parties have complete diversity and the amount in controversy exceeds $75,000.00.  *See* Compl. ¶¶ 4, 6, 8–12.  Furthermore, personal jurisdiction may be exercised as to Anyado Group, which is a limited liability company formed under the laws of the District of Columbia.  *See* Compl. ¶ 6; D.C. Code § 13–422; *Richard v. Bell Atl. Corp.*, 946 F. Supp. 54, 68 (D.D.C. 1996) ("[T]he Court may have general personal jurisdiction because [the defendant] is . . . organized under the laws of, or maintain[s] its principal place of business in the District[.]").

Upon determining that both subject matter and personal jurisdiction requirements are satisfied as to a defaulting defendant, the entry of default judgment is appropriate when the defendant fails "to respond to the summons and complaint, the entry of default, or the motion for default judgment." *Hanley-Wood LLC v. Hanley Wood LLC*, 783 F. Supp. 2d 147, 150 (D.D.C. 2011) (citing *Gutierrez v. Berg Contracting Inc.*, 99-cv-3044 (TAF), 2000 WL 331721, at *1 (D.D.C. March 20, 2000)).  Given defendant's failure to respond to the summons and complaint, and, following the Court's order to show cause why plaintiffs' motion for default judgment should not be granted as conceded, "the absence of any request to set aside the default or suggestion by the defendant that it has a meritorious defense," the Court concludes that entry of default judgment is appropriate in this case. *Gutierrez*, 2000 WL 331721, at *1.  As discussed more fully below, plaintiffs have presented satisfactory evidence to establish defendant's liability under several of the claims asserted and entitlement to the damages and injunctive relief requested.  Each claim will be assessed in turn, followed by a consideration of plaintiffs' entitlement to the requested relief.

1. **Count I: Common Law Right of Publicity**

With the factual allegations in the complaint deemed admitted, plaintiffs have provided

sufficient evidence to show defendant is liable for violating their common law rights of publicity,

which is construed in this case as a claim for misappropriation.

The right of publicity is a common law tort that protects an individual's "exclusive right

to publicize and benefit from the value of [her] identity, reputation, and work." *See Lane v.*

*Random House, Inc.*, 985 F. Supp. 141, 145 (D.D.C. 1995). Not every state recognizes such a

tort, however, and those that do employ widely divergent definitions. *See* Jennifer E. Rothman,

*The Other Side of* Garcia*: The Right of Publicity and Copyright Preemption*, 39 COLUM. J. L. &

ARTS 441, 442–43 (2016); 1 J. Thomas McCarthy *et al.*, THE RIGHTS OF PUBLICITY AND PRIVACY

("RIGHTS OF PUBLICITY") § 1:2 (2d ed. 2022) ("Over 30 states recognize a right of publicity for

living persons, either at common law or by statute."). The District of Columbia, which governs

the state law claims in this suit, *see Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938), is not one

of them, *see* RIGHTS OF PUBLICITY § 6:2 (not including D.C. among the states recognizing a

common law cause of action for right of publicity); *id.* § 6:6 (not including D.C. among the states

with a statutory right of publicity).

Nonetheless, D.C. courts do recognize the tort of misappropriation of name or likeness,

*see, e.g.*, *Doe v. Bernabei & Wachtel, PLLC*, 116 A.3d 1262, 1268 (D.C. 2015), which has been

found to be "indistinguishable as a legal matter" from "infringement of right of publicity,

misappropriation of celebrity, and appropriation of personal identity," *Lane*, 985 F. Supp. at

145–46. Dealing with plaintiffs' claim for right of publicity as a "cause of action for

misappropriation" is therefore appropriate. *See id.* at 146; *see also* 5 Charles A. Wright, *et al.*,

FEDERAL PRACTICE AND PROCEDURE § 1219 (4th ed. 2022) (explaining that the federal rules

"evince a believe that when a party has a valid claim, he should recover on it regardless of his counsel's failure to perceive the true basis of the claim at the pleading stage").

"The District of Columbia has adopted the definition set forth by the RESTATEMENT (SECOND) OF TORTS § 652C for . . . the tort of misappropriation of name." *Doe*, 116 A.3d at 1268 (quoting *Teltschik v. Williams & Jensen, PLLC*, 683 F. Supp. 2d 33, 55 (D.D.C. 2010)). Under the Restatement, a defendant is liable for misappropriation where it "appropriate[s] to [its] own use or benefit the reputation, prestige, social or commercial standing, public interest or other values of the plaintiff's name or likeness." RESTATEMENT (SECOND) OF TORTS § 652C, cmt. c (1977). The defendant's benefit need not be commercial, *id.* cmt. b, but mere use of a plaintiff's name or likeness is insufficient without an accompanying intent to "obtain for [defendant] the values or benefits of the plaintiff's name or identity," *id.* cmt. c.

Plaintiffs sufficiently allege here that defendant appropriated to its own benefit plaintiffs' likenesses. They have alleged that they are successful models and that the professionally shot images of themselves—like those used by defendant here—are of value to various companies and publications, such that they earn a living participating in photoshoots and licensing the resulting images to others. Compl. ¶¶ 15, 22, 25, 28, 31, 34, 46–47. They have further alleged that defendant took the Images, which plaintiffs had produced for other purposes, and used them in its own advertising to promote XO Lounge, without permission and without compensating plaintiffs. *Id.* ¶¶ 21, 42, 48–52. Such use plainly amounts to appropriation of the value of plaintiffs' likenesses per the Restatement's definition.

Accordingly, plaintiffs' motion for default judgment as to their claim for the violation of their rights of publicity, here construed as a tort claim for misappropriation, is granted.

### 2. Counts II–III: False Advertising and False Association

Plaintiffs next bring two claims under Section 43(a) of the Lanham Act, codified at 15 U.S.C. § 1125(a), which provides:

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
>
>> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
>>
>> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

"Section 43(a) thereby provides for 'two distinct bases of liability'—first, in subsection (A), false association, also known as unfair competition or trademark infringement and, second, in subsection (B), false advertising." *Paleteria La Michoacana, Inc. v. Productos Lacteos Tocumbo S.A. De C.V.*, 743 F. App'x 457, 463 (D.C. Cir. 2018) (hereinafter "*PLM*") (quoting *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 134 (2014)).  Plaintiffs bring both types of claims.  Compl. ¶¶ 81–99.

To prevail on a false advertising claim, plaintiffs must show that the defendant made representations of fact in their commercial advertising "that were (1) false or misleading, (2) actually or likely deceptive, (3) material in their effects on buying decisions, (4) connected with interstate commerce, and (5) actually or likely injurious to the plaintiff[s]." *Fernandez v. Jones*, 653 F. Supp. 2d 22, 31–32 (D.D.C. 2009) (internal quotation omitted).  Success on a false association claim requires the plaintiffs to establish that "(1) [defendant] uses [the disputed

materials] in U.S. commerce in connection with the sale of goods or services; (2) [defendant]'s use of [the disputed materials] is likely to cause consumer confusion; and (3) [defendant]'s use will likely damage [plaintiff]." *PLM*, 743 Fed. App'x at 463 (citing 15 U.S.C. § 1125(a)(1)(A); J. McCarthy, McCarthy on Trademarks & Unfair Competition § 27:13 (5th ed. 2018)).  For both types of claims, plaintiffs' injuries must be to a legally cognizable commercial interest, that is, the type of harm the Lanham Act seeks to prevent.  *See PLM*, 743 Fed. App'x at 463–64; *Abrahams v. Simplify Compliance, LLC*, 19-cv-3009 (RDM), 2021 WL 1197732, at *4 (D.D.C. March 30, 2021) (citing *PLM*, 743 F. App'x at 463; *Lexmark*, 772 U.S. at 128).

Plaintiffs' allegations sufficiently establish all elements for both claims.  As to the false advertising claim, the Complaint establishes that (1) the social media posts at issue were misleading because the plaintiffs were depicted as if they worked at or endorsed XO Lounge, when in fact none of them had agreed to be part of the club's advertising, Compl. ¶¶ 83, 87; (2) the posts were designed to and likely did deceive consumers because of the misleading nature of the advertisements, *id.* ¶¶ 84, 88, 89; (3) the posts "had a material effect on the purchasing decisions of consumers who attended the Club," *id.* ¶ 85; (4) the posts "had the capacity to affect interstate commerce" because they were published on the internet, *id.* ¶ 86; and (5) the unauthorized use of the plaintiffs' Images injured them by damaging their professional reputations, depriving them of income they normally derive from their ability to market their images, and limiting their ability to control the commercialization of these particular Images, *id.* ¶¶ 52–54, 60.

As to the false association claim, the Complaint similarly sufficiently alleges that (1) defendant used plaintiffs' Images in commercial advertisements to attract clientele to their club, *id.* ¶¶ 93–95; (2) the use of plaintiffs' Images in those advertisements was likely to confuse

consumers into thinking "that Plaintiffs were affiliated, connected, or associated with the Club, or worked at, sponsored, or approved of the Club's goods, services and commercial activities," *id.* ¶ 93; and (3) that the unauthorized use of the Images was damaging to plaintiffs, for the same reasons explained *supra*.

The nature of plaintiffs' injuries also fulfills the requirement for both claims of being a legally cognizable commercial interest, as their allegations regarding the nature of the modelling industry and how their professional reputations and subsequent modelling engagements will be affected by their apparent ties to XO Lounge, as well as their allegations regarding their lost income tied to these specific Images, both amount to the type of commercial harm the Lanham Act seeks to prevent. *See id.* ¶¶ 16, 19, 21, 52–54, 60. Thus, plaintiffs' motion for default judgment as to their Lanham Act claims is granted.

### 3.    Counts IV–VII: Negligence and Other Common Law Torts

The Complaint concludes with a number of common law torts. With the factual allegations deemed admitted, defendant's liability for each is assessed in turn.

First, plaintiffs brings a claim for negligence, in which they allege that defendant "owed a duty of care to Plaintiffs to ensure that their advertising and promotional materials and practices did not infringe on their property and publicity rights" and to "consumers at large" to avoid misleading advertising practices, Compl. ¶¶ 103–04, which it breached either directly or under a *respondeat superior* theory for its employees' breaches, *id.* ¶¶ 105–06. Under District of Columbia law, a plaintiff claiming negligence "must provide evidence that: '(1) [defendant] owed a duty of care to [plaintiffs]; (2) [defendant] breached that duty; and (3) the breach of duty proximately caused the damages to [plaintiffs].'" *Sullivan v. AboveNet Commc'ns,* 112 A.3d 347, 354 (D.C. 2015) (quoting *Tolu v. Ayodeji,* 945 A.2d 596, 601 (D.C. 2008)).

"The foundation of modern negligence law is the existence of a duty owed by the defendant to the plaintiff." *N.O.L. v. Dist. of Columbia,* 674 A.2d 498, 499 n.2 (D.C. 1995). The alleged duty defendant owed to the public not to engage in misleading advertising is therefore entirely irrelevant; only a duty owed to the plaintiffs could support their claim. The relevant allegation is that defendant owed plaintiffs a general duty of care not to infringe upon their property and publicity rights. To determine whether a party owes a duty of care to another party, courts "'rely[] on the concept of "foreseeability"' and look[] to the '"relationship between the plaintiff and the defendant."'" *Allen v. District of Columbia,* 100 A.3d 63, 84 n.16 (D.C. 2014) (quoting *Hedgepeth v. Whitman Walker Clinic,* 22 A.3d 789, 793–94 (D.C. 2011) (en banc)).

Here, plaintiffs' allegations establish that defendant has absolutely no affiliation with plaintiffs. Compl. ¶¶ 19 (explaining that defendant's actions in using plaintiffs' Images and posting the advertisements were taken "without any Plainitiff's knowledge, consent or authorization"), 24, 27, 30, 33, 36 (alleging that each plaintiff "has never been employed at," "hired to endorse," or "otherwise associated or affiliated with" defendant and XO Lounge). "[T]he duty giving rise to a tort action must have some independent basis," derived from the relationship that exists between the parties and independent of separately imposed duties such as contractual obligations. *See Choharis v. State Farm Fire & Cas. Co.*, 961 A.2d 1080, 1088–89 (D.C. 2008) (internal quotation omitted). As a result, where plaintiffs and defendant are "strangers to one another," defendant cannot be said to owe any "duty of care to the plaintiff[s]." *See Renchard v. Prince William Marine Sales, Inc.*, 87 F. Supp. 3d 271, 281–82 (D.D.C. 2015). Hence, because plaintiffs have no relationship whatsoever with defendant, defendant did not owe them a general duty of care, and plaintiffs' negligence claim must fail.[2]

---

[2] To be clear, the exact contours of the "duty of care" as articulated by plaintiffs here simply amounts to a duty not to commit negligently an independent tort (infringement upon their property and publicity rights). *See*

Next, plaintiffs bring a claim for conversion.  "To state a claim for conversion under D.C. law, a plaintiff must allege (1) an unlawful exercise, (2) of ownership, dominion, or control, (3) over the personal property of another, (4) in denial or repudiation of that person's rights thereto."  *Campbell v. Nat'l Un. Fire Ins. Co. of Pittsburgh, Pa.*, 130 F. Supp. 3d 236, 258 (D.D.C. 2015) (internal quotation omitted).  Plaintiffs allege that they have a "property interest[]" in their Images in that they were "the exclusive owners of all right, title and interest in their Images."  Compl. ¶ 110.  These sorts of intangible property rights, however, cannot support a claim to conversion under District of Columbia law.  *See, e.g.*, *Ficken v. AMR Corp.*, 578 F. Supp. 2d 134, 143 (D.D.C. 2008); *3D Global Sol'ns, Inc. v. MVM, Inc.*, 552 F. Supp. 2d 1, 10 (D.D.C. 2008); *Equity Grp., Ltd. v. Painewebber Inc.*, 839 F. Supp. 930, 933 (D.D.C. 1993).  As a result, defendant is not liable for conversion.

Finally, plaintiffs bring claims for unjust enrichment and quantum meruit, both of which are causes of action available under District of Columbia law "as implied contract claims in which there is no express contract between the parties but contractual obligations are implied, either in fact (quantum meruit) or in law (unjust enrichment)."  *Plesha v. Ferguson*, 725 F. Supp. 2d 106, 111 (D.D.C. 2010) (citing *United States ex rel. Modern Elec., Inc. v. Ideal Elec. Sec. Co.*, 81 F.3d 240, 246–47 (D.C. Cir. 1996)).  That difference is crucial under the circumstances of this case.  To succeed on their quantum meruit claim, plaintiffs must demonstrate "that the parties' conduct implied the existence of a contractual relationship by establishing: (1) valuable services rendered by the plaintiff[s], (2) for the person [from] whom recovery is sought[,] (3)

---

Compl. ¶ 103.  Whether defendant is in fact liable to plaintiffs on those independent bases—as has been discussed *supra*—is irrelevant to the question at issue for the negligence claim, *i.e.*, whether defendant owed a duty of care towards those with whom it has no relationship whatsoever.  *Cf. Renchard*, 87 F. Supp. 3d at 281–82 (rejecting the argument that the general duty of care imposed a duty upon a stranger "like any other joe on the street, . . . not to take the plaintiff's yacht").

which services were accepted and enjoyed by that person, and (4) under circumstances which reasonably notified the person that the plaintiff[s], in performing such services, expected to be paid." *Id.* (citations omitted).  For their unjust enrichment claim, by contrast, plaintiffs must establish that "(1) the plaintiff[s] conferred a benefit on the defendant; (2) the defendant retains the benefit; and (3) under the circumstances, the defendant's retention of the benefit is unjust." *Id.* (quoting *News World Commc'ns, Inc. v. Thompsen*, 878 A.2d 1218, 1222 (D.C. 2005)).

Plaintiffs' claim for quantum meruit must fail because their allegations do not establish that they performed modelling services for defendant pursuant to an implied-in-fact contract. Here, the parties' conduct does not establish that both plaintiffs and defendant knew they were acting under a contractual relationship—specifically, that plaintiffs rendered services for defendant, that defendant accepted those services, and that defendant was on notice that plaintiffs expected payment for those services—because the parties never interacted at all.  Instead, it appears that defendant simply found and used plaintiffs' Images of its own accord, with plaintiffs only realizing the misappropriation years later.  Thus, the allegations do not establish plaintiffs' quantum meruit claim.

The same allegations do imply a contract in law, however, and thus state a claim for unjust enrichment.  Regardless of the parties' knowledge of the transaction at the time, defendant enjoyed the benefit of plaintiffs' modelling services when using their Images in its advertising, defendant has never taken down the advertisements that make use of those Images, and it would be unjust to allow plaintiffs' Images to be misappropriated in this way without their permission or compensation.  Plaintiffs' allegations, as admitted, adequately establish defendant's liability for unjust enrichment.

14

In short, of plaintiffs' remaining common law tort claims, default judgment is granted only as to unjust enrichment.

### B.     Remedies

Plaintiffs seek injunctive relief as well as damages and attorney's fees.  Pls.' Mot. at 4–5. "A defaulting defendant concedes all well-pleaded factual allegations as to liability," but a court may require additional evidence regarding the appropriate remedies.  *Al-Quraan v. 4115 8th St. NW, LLC*, 123 F. Supp. 3d 1, 1 (D.D.C. 2015); *see also SEC v. Mgmt. Dynamics, Inc.*, 515 F.2d 801, 814 (2d Cir. 1975) (requiring district court to "make an independent determination" before granting an injunction, "which is appropriately entered only after the exercise of a court's discretion, and upon a finding of the likelihood that the defendant would commit future violations if not enjoined"); *Carazani v. Zegarra*, 972 F. Supp. 2d 1, 12 (D.D.C. 2013) ("Although default judgment establishes the defaulting party's liability for every well-pleaded allegation in the complaint, it does not automatically establish liability in the amount claimed by the plaintiff.").  "[U]nless the amount of damages is certain, the court is required to make an independent determination of the sum to be awarded."  *Adkins v. Teseo*, 180 F. Supp. 2d 15, 17 (D.D.C. 2001).  "[T]he court may rely on detailed affidavits or documentary evidence to determine the appropriate sum for the default judgment."  *Int'l Painters & Allied Trades Indus. Pension Fund v. R.W. Amrine Drywall Co.*, 239 F. Supp. 2d 26, 30 (D.D.C. 2002).  As explained below, plaintiffs have sufficiently demonstrated entitlement to much of the relief requested and default judgment will be entered as to the requested injunctive relief and damages, but their request for attorney's fees must be denied.

### 1.     Permanent Injunction

The Lanham Act authorizes the Court to grant injunctive relief to prevent instances of false advertising or false association.  15 U.S.C. § 1116(a) (authorizing a court "to grant

injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, . . . to prevent a violation under subsection (a) . . . of section 1125 of this title"). "In determining whether to enter a permanent injunction, the Court considers a modified iteration of the factors it utilizes in assessing preliminary injunctions: (1) success on the merits, (2) whether the plaintiffs will suffer irreparable injury absent an injunction, (3) whether, balancing the hardships, there is harm to defendant[] or other interested parties, and (4) whether the public interest favors granting the injunction." *American Civil Liberties Union v. Mineta,* 319 F. Supp. 2d 69, 87 (D.D.C. 2004).

Upon consideration of these factors, plaintiffs have shown entitlement to an order permanently enjoining defendant from continuing to use plaintiffs' Images in advertising for its club absent plaintiffs' permission. As discussed, *supra*, plaintiffs have succeeded, by default, on the merits of this instant action. The element of irreparable harm is likewise satisfied, in that plaintiffs' professional and personal reputations are adversely affected by "the implication of Defendant['s] use of Plaintiffs' Images is that they are strippers, endorse a night club, or are otherwise associated or affiliated with a night club," Compl. ¶ 54, and because the admitted allegations establish that defendant has "republicized Plaintiff[s'] image and likeness on various occasions, via different mediums," after the initial misappropriation "through the filing of this complaint," *id.* ¶ 74, such that an injunction is necessary to stop that harmful association. Finally, there would be no harm to others if defendant were prevented from further misappropriation of plaintiffs' Images, and the public interest generally favors protection against false advertising and false association. Thus, the Court finds that plaintiffs' request for injunctive relief is reasonable, and plaintiffs' requested permanent injunction enjoining defendant from continuing to misuse plaintiffs' Images will be entered.

### 2.    Damages

Plaintiffs also request compensatory damages, in the total amount of $200,000, which amount they contend is the appropriate collective measure of "the compensation each plaintiff should have received for the use of her images by Defendant," based on the fair market value of those Images and the way in which defendant used them.  Pls.' Mot. at 4–5.  With respect to damages, the Lanham Act provides that "[w]hen . . . a violation under section 1125(a) . . . of this title . . . shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled . . . to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action."  15 U.S.C. § 1117(a).  Plaintiffs' successful common law claims, for misappropriation and unjust enrichment, similarly provide for compensatory damages.  For misappropriation of likeness claims, damages are generally awarded based on the fair market value of the benefit defendant obtained through its use of plaintiffs' name or likeness.  *See, e.g.*, *Electra v. 59 Murray Enterprises, Inc.*, 987 F.3d 233, 256 (2d Cir. 2021); *Grant v. Esquire, Inc.*, 367 F. Supp. 876, 881 (S.D.N.Y. 1973).  Unjust enrichment, too, allows for restitution based on the value unjustly bestowed upon defendant.  *See Peart v. Dist. of Columbia Housing Auth.*, 972 A.2d 810, 813–14 (D.C. 2009).

Plaintiffs support their entitlement to $200,000 in damages with an affidavit from Stephen Chamberlin, a talent agent who has worked in the modelling industry for over 30 years.  Pls.' Mot., Ex. A, Declaration of Stephen Chamberlin ("Chamberlin Decl.") ¶¶ 1–2, ECF No. 16-1.  He calculates the total figure by estimating what each plaintiff would have earned if she had agreed to do a day shoot for defendant ($7,500–$12,500 per model for most of the plaintiffs, with plaintiff Joanna Krupa commanding more at $50,000) and then authorized the use of the resulting images for the particular purpose of advertising (that is, attaching the advertiser's name

17

to the model's image) and the method of distribution over social media for one year.  *Id.* ¶¶ 19–20, 24–30, 33; *id.* at 20.[3]  He represents that these calculations approximate the "fair market value of each Model's image for the specific appropriated use by the Club," and that they do not account for "the damage or possible end of their career, damage to reputation, or loss of other clients and advertisers [as a result of] the Models being associated with this type of business." *Id.* ¶ 11.  For each plaintiff, Chamberlin "employed the same approach, methodology, and process that [he] would typically employ when determining what to charge a company or other entity that is interested in hiring models [he] represent[s]," in an attempt to "recreate a negotiation process that did not occur."  *Id.* ¶¶ 13, 36.  To inform that approach, he considered the allegations in plaintiffs' Complaint, the Images at issue, the plaintiffs' "earning history" alongside many other enumerated "factors determining and [a]ffecting earning capacity," and interviews he conducted with the plaintiffs.  *Id.* ¶¶ 7–12.

 "When moving for default judgment, the plaintiffs must prove that they are entitled to the requested damages."  *Boland v. Elite Terrazzo Flooring, Inc.*, 763 F. Supp. 2d 64, 68 (D.D.C. 2011).  Where, as here, the amount of damages is not certain, "the court must make an independent determination of the sum to be awarded," which determination may be made after either "hold[ing] a hearing or rely[ing] on detailed affidavits or documentary evidence to calculate the plaintiffs' damages."  *Id.* (citations omitted).

Under the circumstances, Chamberlin's affidavit offers a reasonable calculation of the damages suffered in this case.  It simulates a negotiation that could have occurred had defendant

---

[3]     Chamberlin lays out many factors that contribute to the determination of a model's day rate, including her work history, television and movie appearances, and number of social media followers.  Chamberlin Decl. ¶¶ 21–22. While he does not specifically explain why Krupa's day rate so far exceeds her fellow plaintiffs', the disparity seems plausible given Krupa's comparatively high profile, with numerous magazine cover engagements and television and movie roles.  *See* Compl. ¶ 31.

chosen to contract with plaintiffs to pay for the modeling services it instead used for free, which simulation is informed by Chamberlin's decades of experience negotiating actual modeling contracts.  To be sure, had this case been litigated, there may well have been legitimate criticisms of his methods and alternative calculations offered that may have proved more convincing.  *See, e.g.*, *Gibson v. SCE Grp., Inc.*, 15-cv-8168 (ER), 2022 WL 901591, at *2–5 (S.D.N.Y. March 25, 2022) (concluding, upon consideration of cross-motions for summary judgment, that Chamberlin's damages calculation had "deficiencies" in comparison to other available methods and evidence).  Yet, defendant has chosen not to participate in this litigation and therefore forfeited the opportunity to challenge any aspect of Chamberlin's methodology or calculations, which on this record sufficiently justifies plaintiffs' damages calculations.  *See, e.g.*, *Hinton v. Completely Innocent LLC*, 21-cv-1019 (SPL), 2022 WL 80049, at *5 (D. Ariz. Jan. 7. 2022) (concluding, at the default judgment stage, that Chamberlin's affidavit offered a "thorough, well-founded, and sufficient evidence of the actual damages"); *Moreland v. A-Q-B, LLC*, 19-cv-372 (ADA), 2019 WL 6727870, at *3 (W.D. Tex. Dec. 11, 2019) (same); *Gibson v. Cowboys Saloon Gainesville, LLC*, 18-cv-138 (GRJ), 2020 WL 3055453, at *8 (N.D. Fla. Feb. 5, 2020) (recommending same); *Cerny v. Costa Verde Corp.*, 21-cv-10927 (ADB), 2022 WL 3566818, at *3 (D. Mass. Aug. 18, 2022) (same); *Souza v. Nowhere Bottle and Social Club, Inc.*, 19-cv-24692 (CMA), 2020 WL 13420543, at *7 (same); *Lundberg v. One Three Five, Inc.*, 19-cv-692 (CRE), 2020 WL 9809978, at *2 (W.D. Pa. July 6, 2020) (recommending same), *adopted by* 2020 WL 9809977 (W.D. Pa. July 22, 2020), *vacated on other grounds by* 2021 WL 1224507 (W.D. Pa. Apr. 1, 2021); *Sampedro v. Club Caribbean LLC*, 19-cv-12921, 2020 WL 13441623, at *1 (E.D. Mich. Apr. 9, 2020) (same).  Plaintiffs' estimate of the damages is reasonable and as

accurate as possible given the posture of this litigation and the available record, and their calculation is therefore accepted.

### 3.    Attorney's Fees

Plaintiffs also seek to recover attorney's fees and costs incurred prosecuting this action. Pls.' Mot. at 5–6.  By obtaining a default judgment, plaintiffs qualify as "the prevailing part[ies]" here.  *See Serrano v. Chicken-Out, Inc.*, 209 F. Supp. 3d 179, 194 (D.D.C. 2016).  As such, they are entitled to costs as specified by Federal Rule of Civil Procedure 54(d)(1).  Plaintiffs have not documented any costs, but the record reflects payment of a $402 filing fee.  Therefore, costs will be awarded in that amount.  Their request for attorney's fees, however, will be denied.

Under the Lanham Act, in "exceptional cases" a court has the discretion to award reasonable attorney's fees to a prevailing party.  15 U.S.C. § 1117(a).  The D.C. Circuit has construed the "exceptional cases" standard to require a court to "find willful or bad faith infringement by the defendant in order to award attorney's fees to the plaintiff."  *Reader's Dig. Ass'n, Inc. v. Conservative Dig., Inc.*, 821 F.2d 800, 808 (D.C. Cir. 1987), *overruled on other grounds by Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994).  Willfulness or bad faith in a Lanham Act case "means passing off a product or service as another seller's better-established one, or some other deliberate theft of a mark holder's good will—in sum, conduct aimed at a victim targeted by the defendant."  *ALPO Petfoods, Inc. v. Ralston Purina Co.*, 913 F.2d 958, 966 (D.C. Cir. 1990).

Recent Supreme Court and D.C. Circuit cases, however, call into question whether this interpretation of the "exceptional cases" standard remains viable.  In *Octane Fitness, LLC v. ICON Health and Fitness, Inc.*, the Supreme Court, in interpreting the attorney's fees provision in the Patent Act, which is identical to that of § 1117(a), held "that an 'exceptional' case is

simply one that stands out from others with respect to the substantive strength of a party's

litigating position (considering both the governing law and the facts of the case) or the

unreasonable manner in which the case was litigated."  572 U.S. 545, 554 (2014).  Notably, the

Court did not require different findings for different prevailing parties or a finding of willfulness

or bad faith, but instead instructed district courts to "determine whether a case is 'exceptional' in

the case-by-case exercise of their discretion, considering the totality of circumstances."  *Id.*  As

noted, because the language in § 1117(a) is identical to the language interpreted by the Supreme

Court in *Octane Fitness*, every federal appellate court to consider the question has since held that

the *Octane Fitness* standard also applies to requests for attorney's fees under the Lanham Act.

*See Yah Kai World Wide Enterprises, Inc. v. Napper*, 292 F. Supp. 3d 337, 366 (D.D.C. 2018)

(collecting cases).

The D.C. Circuit also appears to have concluded that the *Octane Fitness* standard is

applicable to requests for attorney's fees under 15 U.S.C. §1117(a).  In *Xereas v. Heiss*, the D.C.

Circuit highlighted the Supreme Court's interpretation of the Patent Act's attorney's fee

provision in *Octane Fitness* and held that, like that of the Patent Act, the Lanham Act's fee-

shifting provision in § 1117(a) places the determination of whether a case is exceptional under

the discretion of the district court.  987 F.3d 1124, 1136–37 (D.C. Cir. 2021).  Consistent with

*Octane Fitness*, the D.C. Circuit explained that, under § 1117(a) "district courts 'may determine

whether a case is "exceptional" in the case-by-case exercise of their discretion, considering the

totality of the circumstances.'"  *Id.* at 1137 (quoting *Octane Fitness*, 572 U.S. at 554).  Without

expressly abrogating the D.C. Circuit's prior caselaw requiring a finding of willfulness or bad

faith to award attorney's fees to a prevailing plaintiff under §1117(a), the Circuit's decision in

*Xereas* strongly suggests this finding may simply no longer be required.

Regardless of whether *Octane Fitness* and *Xereas* spell the end to the D.C. Circuit's willfulness or bad faith requirement, plaintiffs are not entitled to attorney's fees on their Lanham Act claims.  Here, while the facts in plaintiffs' Complaint suffice to state claims for false advertising and false association, they do not include the sort of additional details about defendant's conduct that would render those Lanham Act violations exceptional or extraordinary. Plaintiffs do not contend, for example, that they ever attempted to send a cease-and-desist letter or otherwise warn defendant about its infringing conduct before filing this suit, or that defendant continued to use plaintiffs' Images in its advertising over an extended period.  Without these or other aggravating details, nothing elevates these particular instances of false advertising and false association above those of a typical case.  In short, whether the *Octane Fitness* standard or the willfulness standard governs, plaintiffs have not established the appropriateness of an award for attorney's fees for their Lanham Act claims.

Plaintiffs' other successful claims arise under the common law.  Under the common law "American Rule," "parties are ordinarily required to bear their own attorney's fees," so federal courts "follow 'a general practice of not awarding fees to a prevailing party absent explicit statutory authority.'" *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 602 (2001) (citation omitted) (quoting *Key Tronic Corp. v. United States*, 511 U.S. 809, 819 (1994)).  Plaintiffs do not cite any basis for departure from this rule on their common law claims, nor have they requested and demonstrated the propriety of sanctions under any applicable rule of federal civil procedure.  Absent such a showing, there is no basis upon which to grant plaintiffs' request for attorney's fees.

**IV.     CONCLUSION**

For the foregoing reasons, plaintiffs' motion for default judgment is granted as to Counts
I, II, III, and VI and denied as to Counts IV, V, and VII.  Accordingly, a permanent injunction
will be entered against defendant enjoining it from continuing to use plaintiffs' Images in its
advertising.  The Court will award plaintiffs compensatory damages in the amount of $200,000,
in addition to the costs of bringing this lawsuit, but the request for attorney's fees will be denied.

An Order consistent with this Memorandum Opinion will issue contemporaneously.

Date:  January 31, 2023

_____
BERYL A. HOWELL
Chief Judge